UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JONI ROXANNE LYONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cv-00542-SEB-MJD |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Joni Roxanne Lyons ("Lyons") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3).  For the reasons set forth below, the Magistrate Judge recommends that the District Judge **REVERSE** the decision of the Commissioner and **REMAND** the matter for further consideration.

**I.   Background**

Lyons filed her application for DIB and SSI on February 16, 2012, alleging April 19, 2010 as the onset date of her disability.  [R. at 148-59.] In her disability report filed in conjunction with her application, Lyons listed bulging disc, degenerative disc disease, scoliosis, fibromyalgia, depression, anxiety, PTSD, panic attacks, and asthma as her disabling

impairments.[1]  [R. at 174.] Lyons's application was denied initially on March 30, 2012 and upon

reconsideration on June 6, 2012.  [R. at 91-98.]  Lyons timely requested a hearing on her

application, which was held before Administrative Law Judge Mark Ziercher ("ALJ") on August

23, 2013.  [R. at 41.]  The ALJ issued his decision on November 11, 2013, denying Lyons's

application for DIB and SSI, [R. at 17] and on February 25, 2015 the Appeals Council denied

Lyons's request for review, making the ALJ's decision the final decision of the Commissioner

for the purposes of judicial review. [R. at 1.]  Lyons timely filed her Complaint with this Court

on April 6, 2015.

## II.   Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. §

423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the

ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful

activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that

significantly limits her ability to perform basic work activities, she is not disabled; (3) if the

---

[1] Lyons recited the relevant factual and medical background in her opening brief.  [*See* Dkt. 16.]  The
Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 17.]  Because these facts
involve Lyons's confidential and otherwise sensitive medical information, the Court will incorporate by reference
the factual background in the parties' briefs and articulate specific facts as needed below.

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a
claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for Disability Insurance
Benefits and Supplemental Security Income claims.  Therefore, citations in this opinion should be considered to
refer to the appropriate parallel provisions as context dictates.  The same applies to citations of statutes and
regulations found within cited court decisions.

claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three and either cannot perform her past relevant work or has no past relevant work but she can perform certain other available work, she is not disabled.  20 C.F.R. § 404.1520.  Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities.  S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred."  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion.  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)).  The ALJ "need not evaluate in writing every piece of testimony and evidence submitted."  *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)).  However, the "ALJ's decision must be based upon consideration of all the relevant evidence."  *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  To be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every

piece of evidence or testimony," he must "provide some glimpse into his reasoning" and "build

an accurate and logical bridge from the evidence to his conclusion." *Dixon*, 270 F.3d at 1176.

### III.   The ALJ's Decision

In his decision, the ALJ first determined Lyons met the insured status requirements of the

Act through June 30, 2015 and has not engaged in substantial gainful activity since April 19,

2010. [R. at 22.] At step two, the ALJ found Lyons's degenerative disc disease of the cervical,

thoracic, and lumbar spine; major depressive disorder; posttraumatic stress disorder; panic

attacks with agoraphobia; and chronic pain syndrome to be severe impairments, as defined by the

Act, because they had a more than minimal effect on Lyons's ability to do basic work activities.

[R. at 23.] However, at step three the ALJ found Lyons did not have an impairment that meets or

medically equals a Listing by evaluating Listing 1.04 for her back pain, and Listings 12.04 and

12.06 for her mental impairments. [R. at 25-27.]

At step three but before step four, the ALJ, after "careful consideration of the entire

record," determined Lyons had the RFC to perform "light exertional work" with the following

additional limitations:

> [S]he can stand and or walk for up to a total of 4 hours in an eight-hour day, and
> can sit for up to a total of six hours in an eight-hour workday. She can occasionally
> climb ramps, stairs, ladders, ropes, or scaffolds; and can occasionally balance,
> stoop, kneel, crouch or crawl. Regarding the neck, she can perform flexion,
> extension and rotation frequently. She can frequently reach in all directions
> bilaterally. She can have frequent exposure to wetness (as defined in the Selected
> Characteristics of Occupations). Regarding respiratory irritants (e.g. fumes,
> noxious odors, dusts, mists, gases, and poor ventilation), she can work in situations
> up to but excluding concentrated exposure (e.g., a manufacturing floor or
> construction site). She can have frequent exposure to moving mechanical parts and
> high, exposed places (as defined by the Selected Characteristics of Occupations).
> She can understand, remember, and perform work tasks for up to and [sic] average
> of 95 to 100% of an eight-hour workday, not including the typical morning, lunch,
> and afternoon breaks. She can have frequent contact with co-workers. She can have
> occasional contact with the public.

[R. at 27.]  Having made this RFC assessment, the ALJ found at step four that Lyons was unable to perform her past relevant work.  [R. at 32-33.]  However, considering Lyons's age, education, work experience, and RFC, the ALJ found at step five there were jobs that existed in significant numbers that Lyons could perform.  [R. at 33-34.]  Specifically, the ALJ found Lyons was able to perform work as a collator operator, router, silver wrapper, parimutuel ticket checker, ampule sealer, and table worker. [*Id.*] Based on these findings, the ALJ concluded Lyons is not disabled, as defined by the Social Security Act. [R. at 34-35.]

## IV.   Discussion

On appeal, Lyons argues the ALJ erred by failing to consider the results of a 2009 MRI conducted on her back when making his disability finding. Furthermore, she argues the ALJ failed to adequately relate her limitations in concentration, persistence or pace in his hypothetical to the vocational expert ("VE").

### A.  2009 MRI

Lyons argues the ALJ failed to properly consider a 2009 MRI conducted on Lyons's back. Specifically, she argues the ALJ's failure to consider this MRI resulted in an improper analysis of both Lyons's credibility and the opinion of her treating physician. The Court agrees.

Lyons submitted evidence of an MRI conducted on her back on December 3, 2009 and an interview with her treating physician, Dr. Scott Taylor ("Dr. Taylor,") discussing Lyons's impairment. [R. 262-69; 457-58.] The MRI showed Lyons had an extruded disc in her lower back. [R. at 457-58.] Dr. Taylor explained that an extruded disk is a more severe injury than a herniated disk, and is expected to cause pain in a patient's right hip and down her leg. [R. at 264.] He further explained that an extruded disk would not appear on an X-ray. [R. at 265.]

5

Finally, Dr. Taylor explained that Lyons's condition was unlikely to have improved since 2009. [R. at 266-67.]

The ALJ did not discuss the 2009 MRI in his opinion. The only medical tests the ALJ referenced in his decision were **X-rays** conducted in December 2009 and September 2013. [R. at 23, 31.] However, Dr. Taylor's uncontradicted medical opinion indicates the X-rays did not show the true severity of Lyons's impairment. [R. at 265.] Furthermore, the ALJ summarily concluded Dr. Taylor's statements in his interview were "similar to [Dr. Taylor's] comments at Exhibit 15-F." [R. at 31.] However, Exhibit 15-F contains only two short hand-written notes by Dr. Taylor clarifying his answers to an RFC Questionnaire he had filled out for Lyons. [R. at 439-43; 452-53.] As discussed above, Dr. Taylor's interview went beyond the RFC Questionnaire to describe Lyons's impairment, the symptoms of her impairment, and the medical evidence he relied upon when diagnosing her. [R. at 263-69.]

An ALJ is required to "consider all of the relevant evidence in the record in assessing the claimant's residual functional capacity." *Shumaker v. Colvin*, No. 15-1923, 2015 WL 8479517, at *6 (7th Cir. Dec. 10, 2015). This is especially true for medical opinions submitted by the claimant's treating physician. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). Furthermore, the Court "cannot uphold an administrative decision that fails to mention highly pertinent evidence." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The evidence the ALJ ignored is "highly pertinent" to this case. The ALJ relied heavily on the supposed lack of objective medical evidence when discrediting Lyons's alleged limitations. [R. at 30 ("the magnitude of the pain and the extent of the symptoms and limitations [alleged by Lyons] are not supported by medically acceptable clinical and diagnostic techniques"); *id.* ("there is insufficient objective medical evidence that the impairments are of such severity that it [sic] they can reasonably be expected to

give rise to the alleged level of pain and limitations"); R. at 32 ("the medical evidence, and imaging in particular, does not support the reduced capacities to the extent that the claimant asserts.").] However, the 2009 MRI showing an extruded disk provides objective medical support for Lyons's alleged symptoms that did not appear on the X-rays reviewed by the ALJ. *See* S.S.R. 96-7p ("In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence").

Additionally, the ALJ gave "little weight" to the RFC Questionnaire filled out by Dr. Taylor, Lyons's treating physician, and adopted the opinions of two Disability Determination Services ("DDS") doctors on Lyons's exertional and postural limitations. [R. at 31.] The ALJ reasoned the DDS opinions "are consistent with the medical evidence, and in particular cervical, thoracic and lumbar imaging." [*Id*.]  However, the ALJ did not consider whether the DDS doctors' opinions were consistent with the results of the 2009 MRI. [*Id*.] Moreover, the DDS doctors did not have the opportunity to review the 2009 MRI before submitting their opinions. [R. at 30-31; 260-61.] Thus, the 2009 MRI and Dr. Taylor's interview undermine the ALJ's analysis on the proper weight to give to the opinions of the DDS doctors.

Finally, Dr. Taylor's interview provides information that supports his opinion in his RFC Questionnaire. In his interview, Dr. Taylor stated he specializes in "musculoskeletal pain management" and works primarily with spinal conditions. [R. at 263.] He also described the tests he performed on Lyons, the results of those tests, and her symptoms.  [R. at 264-66.] This information supports Dr. Taylor's opinion regarding Lyons's limitations, yet the ALJ considered none of this when deciding to give Dr. Taylor's opinion "little weight." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); 20 C.F.R. § 404.1527 (listing the factors the ALJ must consider when determining how much weight to give the opinion of a treating physician).

The ALJ argued Dr. Taylor had "infrequent contact" with Lyons, making his opinion less credible. [R. at 29, 31.] However, both Dr. Taylor's interview and Lyons's testimony at her hearing indicated Lyons lost her insurance in 2010 and had financial problems that made it difficult for her to afford more treatment. [R. at 52-54, 60-61.]  An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." S.S.R. 96-7p; *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013). Furthermore, Lyons's financial problems and difficulty affording treatment place an even greater emphasis on the objective medical evidence in the record, including the 2009 MRI.

The Commissioner argues the 2009 MRI is not relevant because it preceded the alleged onset date of Lyons's disability. [Dkt. 17 at 12.] However, the ALJ did not make this argument in his decision and "'what matters are the reasons articulated by the ALJ,' not the rationale advanced by the government on appeal." *Smith v. Astrue*, 467 F. App'x 507, 511 (7th Cir. 2012) (citing *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011)). Moreover, Lyons suffers from a "degenerative disc disease" that is unlikely to improve over time. [R. at 266-67, 439;] *see Scrogham v. Colvin*, 765 F.3d 685, 696 (7th Cir. 2014); *Borski v. Barnhart*, 33 F. App'x 220, 225 (7th Cir. 2002). Thus, the fact that the 2009 MRI predated Lyons's alleged onset date does not justify the ALJ's failure to consider the MRI in his analysis.

In sum, the ALJ ignored "highly pertinent evidence" when making his decision. *Parker*, 597 F.3d at 921. The 2009 MRI, and Dr. Taylor's accompanying interview, support Lyons's claim for disability. Given the ALJ's emphasis on the objective medical evidence when analyzing Lyons's credibility and Dr. Taylor's RFC Questionnaire, the ALJ was required to "confront the evidence that does not support his conclusion and explain why that evidence was

rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Since the ALJ did not do that

here, the case must be remanded. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001)

(finding the ALJ erred in formulating her RFC assessment when "she made no mention of [the

claimant's] MRI results, and several of the medical findings that she relied on concerning [the

claimant's] capacity to work . . . were rendered before the MRI was ever taken.")

   B. **Hypothetical to the Vocational Expert**

   Next, Lyons argues the ALJ failed to adequately relate her limitations in concentration,

persistence or pace in his hypothetical to the VE.  In the Seventh Circuit, "both the hypothetical

posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations

supported by the medical record. This includes any deficiencies the claimant may have in

concentration, persistence or pace."[3] *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (internal

citations omitted); *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).

   The ALJ found Lyons had "moderate difficulties" in concentration, persistence or pace.

[R. at 25.] As a result, in his hypothetical to the VE the ALJ described a person who can perform

jobs that require a level 3 General Educational Development ("GED") reasoning score and "can

perform productive work tasks for up to an average of 98 to 100 percent of an 8 hour work day,

not including the typical morning, lunch, and afternoon breaks."[4] [R. at 73.] Lyons argues this

hypothetical did not adequately relate her moderate limitations in concentration, persistence or

pace to the VE.

---

[3] The Seventh Circuit has recognized an exception to this general rule in some cases when the VE "independently reviewed the medical record or heard testimony directly addressing those limitations." *O'Connor-Spinner*, 627 F.3d at 619; *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992). However, the Commissioner did not raise this argument in her brief, and therefore the argument is waived. *See Cty. of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 617 (7th Cir. 2006).
[4] In his RFC assessment, the ALJ concluded Lyons could work "up to and [sic] average of **95** to 100% of an eight-hour workday."  [R. at 27 (emphasis added).] However, because Lyons is challenging the ALJ's hypothetical to the VE, and not his RFC assessment, the Court will focus its analysis on the less restrictive limitations in the ALJ's hypothetical.

The Court finds the ALJ's statement that the hypothetical claimant "can perform productive work tasks for up to an average of 98 to 100 percent of an 8 hour work day" insufficiently related Lyons's limitations in concentration, persistence or pace. [R. at 73.] The ALJ relied primarily on the opinion of DDS psychologist Dr. Lovko when making his finding as to Lyons's limitations in concentration, persistence or pace. [R. at 26.] Dr. Lovko opined that, among other limitations, Lyons had moderate difficulties in her "ability to work in coordination with or proximity to others without being distracted by them" as well as moderate difficulties in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." [R. at 337-38.] The Court does not see how moderate difficulties in these areas translates into the ability to "perform productive work tasks for up to an average of 98 to 100 percent of an 8 hour work day." [R. at 73.] If this were true, there would be no difference between a person who is "moderately limited" in these areas and a person who is "not significantly limited" in these areas. [*See* R. at 337-39.][5]

The ALJ's hypothetical is even more problematic considering his failure, discussed above, to properly evaluate Lyons's credibility and the opinion of Dr. Taylor. Had the ALJ properly considered the entire record, he may have found Lyons had even greater limitations in concentration, persistence or pace that needed to be incorporated into his RFC assessment and hypothetical.  *See Outlaw v. Astrue*, 412 F. App'x. 894, 897 (7th Cir. 2011) ("RFC determinations are inherently intertwined with matters of credibility.") Therefore, on remand, the

---

[5] The Commissioner argues the hypothetical properly related Lyons's limitations because Lyons was limited only in that she was unable to work around a large group of people. [Dkt. 17 at 14 (citing R. at 338-39).] However, even if Lyons's only limitation was that she could not work around a large group of people, the ALJ's hypothetical still does not relate that restriction. The hypothetical described a person who "can have frequent contact with coworkers and . . . occasional contact with the general public." [R. at 73.] Nowhere in the hypothetical does the ALJ state the hypothetical person could not work around a large group of people. [*Id.*]

ALJ should take a "fresh look" at Lyons's limitations in concentration, persistence or pace after a proper evaluation of all the evidence in the record. *See Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014).

### V.   Conclusion

For these reasons, the Magistrate Judge recommends that the District Judge **REVERSE** and **REMAND** the matter for further consideration. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date:  22 JAN 2016

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Thomas E. Hamer
tom@tomhamerlaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

11